**UNITED STATES, Appellee,**

v.

**Robert S. REICHARDT, Specialist Four, U.S. Army, Appellant.**

**No. 59,887.**

**CM 8701752.**

U.S. Court of Military Appeals.

May 8, 1989.

For Appellant: *Captain Ralph L. Gonzalez* (argued); *Lieutenant Colonel Russell S. Estey* and *Major Marion E. Winter* (on brief); *Lieutenant Colonel Joel D. Miller* and *Lieutenant Colonel Charles A. Zimmerman.*

For Appellee: *Captain Randy V. Cargill* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson,* and *Major Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On July 17, 1987, appellant was tried by general courtmartial composed of officer and enlisted members at Aschaffenburg, Federal Republic of Germany. Pursuant to his pleas, he was found guilty of attempted larceny, larceny of less than $100.00, larceny of $2,400.00, and forgery, in violation of Articles 80, 121, and 123, Uniform Code of Military Justice, 10 USC §§ 880, 921, and 923, respectively. He was sentenced to a bad-conduct discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence after re-

ducing confinement to 1 year. The Court of Military Review affirmed the findings and sentence in a short-form opinion dated January 13, 1988.

This Court granted review[1] of the following issue:

WHETHER THE MILITARY JUDGE IMPROPERLY DENIED A DEFENSE CHALLENGE FOR CAUSE.

We hold that the military judge did not abuse his discretion in denying the defense challenge for cause against a potential member of this court-martial. *Cf. United States v. Smart*, 21 MJ 15 (CMA 1985).

The substance of appellant's crimes in this case was that he acquired another soldier's Automatic Teller Card and used that card to obtain $2400.00 from the latter's account. On appeal, appellant alleges that the military judge improperly denied a challenge for cause against a prospective member of his court-martial who had previously been the victim of a similar crime.

During *voir dire*, the following exchange occurred:

DC: Thank you, sir. Has any member been a victim in a larceny or theft case? Let the record reflect that Colonel Hardy, First Sergeant Brackeen, and First Sergeant Whitcomb—no. First Sergeant Brackeen and Colonel Hardy have given affirmative responses.

\* \* \* \* \* \*

MEMBER [1SG BRACKEEN]: My teller card was stolen from me, and money was taken from it.

DC: Okay. Do you feel that based on that case that you would have problems with a similar, a very similar case?

MEMBER [1SG BRACKEEN]: No, ma'am.

\* \* \* \* \* \*

[Defense counsel then received permission from the court to inquire further into 1SG Brackeen's answer.]

\* \* \* \* \* \*

DC: Could you tell us the specifics of what happened with regard to the theft of your ATM card?

MEMBER [1SG BRACKEEN]: My wife was in—it was at Fort Hood, Texas. My wife was in a—a grocery store, and somebody ran by and grabbed her bag and took off with it, and eventually used my card to get, I think, $100.00 or $200.00 with it. I don't remember the exact amount.

DC: Okay. Was that individual ever caught?

MEMBER [1SG BRACKEEN]: Yes, ma'am.

DC: And what happened to him? Do you know, or not?

MEMBER [1SG BRACKEEN]: It was a lady, and she went to trial, and she was found guilty. I don't even know what she got. I wasn't there. I was given back the money, but I—what happened to the lady, I don't—

DC: So, it was in the amount of a couple of hundred dollars?

MEMBER [1SG BRACKEEN]: Yes, ma'am.

DC: Again, I asked you earlier, and I'd like to reinforce it, do you understand that—and I'm also sorry that it happened to you.

MEMBER [1SG BRACKEEN]: Yes, ma'am.

DC: But, having been the victim in a similar case, do you feel that you would have sympathy for the victim in this case more than an average soldier, say, and therefore, feel strongly about harsh punishment?

MEMBER [1SG BRACKEEN]: I don't think so, ma'am.

DC: Okay. Thank you very much, First Sergeant.

MEMBER [1SG BRACKEEN]: Yes, ma'am.

MJ: Just a moment, First Sergeant.

1. We heard oral argument in this case at the United States Military Academy, West Point, New York, at the invitation of the Legal Department, United States Military Academy, and without objection from the parties involved.

First Sergeant, did you encounter any kind of difficulties, administratively with regard to your Automatic Teller Card so that this would potentially become a very provoking matter for you during the course of these proceedings?

MEMBER [1SG BRACKEEN]: Sir, I can't hear you.

MJ: ... Did you suffer any kind of administrative difficulty with respect to your Automatic Teller Card that was taken such that you would have any kind of grievous thoughts during the course of these proceedings?

MEMBER [1SG BRACKEEN]: No, sir.

MJ: None, whatsoever?

MEMBER [1SG BRACKEEN]: No, sir.

MJ: Well, once again, I'll ask you a question that the defense counsel asked. Are you confident, sitting as a juror today, that you can render the type of impartial judgment with regard to a sentence such that if you were the accused that you would want a court member like you sitting on the panel?

MEMBER [1SG BRACKEEN]: I honestly believe that I can be fair; yes, sir.

MJ: Does the defense counsel have any questions?

DC: No, sir. Thank you.

MJ: Any questions by the prosecution?

TC: No, sir.

MJ: Very well. You may retire to the deliberation room. [First Sergeant Brackeen, member, withdrew from the courtroom to the deliberation room.]

DC: Your Honor, based on the answers that First Sergeant Brackeen gave, the defense would challenge him for cause, and although I recognize that he has correctly—or appropriately answered the questions as to whether he feels, personally, that he would be biased, given the similarity between his case, having been the victim of an ATM Teller theft, and the situation here, the defense would challenge him for cause.

MJ: All right. Now, I'm aware of the recent holding in the case of the *United States versus Moyar*, and I'm aware of the cautionary manner in which that opinion was written, but unless there is a disagreement by either counsel in this case, I believe that the responses given to this court by First Sergeant Brackeen were candid; they represented a sincere response, and I certainly detected in his response no particular proclivity to be either impartial [sic] or biased in this case as a result of being a victim, however be it, tangential or directly, with respect to the larceny of his Automatic Teller Card, and therefore, I'm not going to grant the challenge for cause.

I might also say, as a way of a proviso in these cases, that in the Federal Republic of Germany, I'm aware that panels normally are drawn up with a paucity of members, and although this is not a consideration as to my ruling in this case, it is incumbent upon the Government, I believe, to include more panel members on these courts. It would certainly save some time and energy, I suppose, in the long run, when and if members are in the situation as we're confronted with here with First Sergeant Brackeen. But I am convinced by his demeanor and by his candidness, and by his sincerity, that he is not predisposed or impartial or partial in this case, as a result of being a victim of one of these offenses similar to the accused.

MJ: Is there any peremptory challenge, or any other challenges for cause by either side?

TC: The Government has no challenge for cause, Your Honor.

MJ: Captain Troxell?

DC: No challenges for cause, Your Honor. The defense would exercise the peremptory challenge against First Sergeant Brackeen, and would note for the record that had the challenge for cause against him been granted, the defense would have exercised peremptory against another member.

---

■ At the outset we note that appellant pleaded guilty to the charged offenses and,

therefore, the granted issue could only affect the sentence imposed by the members of his court-martial. *See United States v. Smart*, 21 MJ at 21 n. 4. In addition, this case was tried more than a year and a half after the decision of this Court in *Smart.* We, therefore, assume that the parties to this trial and the judge were aware of this decision.[2] Finally, despite the general similarity in the crimes committed by the appellant and those perpetrated on First Sergeant Brackeen, we note that the latter were neither particularly traumatic as far as the challenged member was concerned nor were they reoccurring experiences. *Cf. United States v. Smart, supra* at 20.

In *Smart* we clearly held that the mere fact that a member had been the victim of a type of crime similar to what an accused was charged with did not *per se* disqualify the member from sitting on that accused's panel. 21 MJ at 19, 20. In *United States v. Towers*, 24 MJ 143 (CMA 1987), we likewise approved rejection of a defense challenge for cause based solely on the fact that a panel member possessed expert knowledge regarding child sexual abuse, the crime for which that accused was tried. Instead, the critical question under military law has been whether a member possessed an inflexible or biased attitude as a result of being the victim of a similar crime. *See United States v. Towers, supra* at 146; *United States v. Smart, supra* at 19, 20; *United States v. Tippit*, 9 MJ 106, 107 (CMA 1980).

■ Indeed, it is normally "sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961); *see United States v. Parker*, 6 USCMA 274, 284, 19 CMR 400, 410 (1955). However, a principal import of *Smart* is that a military judge must conduct a proper *voir dire* of a poten-

tial member who has been a victim of a similar crime to erase any doubts of partiality. *United States v. Smart*, 21 MJ at 19; *see generally United States v. Hargrove*, 25 MJ 68 (CMA 1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988). We will not hesitate to order a rehearing where substantial unanswered questions exist on the record as to the impartiality of a member. *See United States v. Smith*, 27 MJ 242, 251 (CMA 1988); RCM 912(f)(1)(N), Manual for Courts–Martial, United States, 1984.

■ In the case *sub judice*, First Sergeant Brackeen gave no equivocal answers, and his answers do not manifest any evasion or cause to disbelieve him. His responses simply do not compare to the extensive equivocations of Captain Harrison, the member in *United States v. Smart, supra*, whose answers were found suspect by this Court. *Id.* at 16–17. In addition, the military judge here conducted a searching *voir dire* of First Sergeant Brackeen and commented specifically on his favorable impression of this member when he made his ruling. *See generally Rushen v. Spain*, 464 U.S. 114, 120–21, 104 S.Ct. 453, 456–57, 78 L.Ed.2d 267 (1983). It is, therefore, clear that the military judge relied upon more than the first sergeant's naked disclaimer of bias in making his ruling. *Cf. United States v. Smart, supra* at 19–20. In sum, we conclude that the military judge did not abuse his discretion in denying the challenge for cause against this member. *See Smith v. Philips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982); *United States v. Reynolds*, 23 MJ 292, 294 (CMA 1987).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.

---

**2.** The military judge in this case referred to "*United States v. Moyer*" [sic] without citation. We note *United States v. Moyar*, 24 MJ 635 (ACMR 1987), addresses and applies the deci-

sion of this Court in *United States v. Smart*, 21 MJ 15 (CMA 1985). We cited *Moyar* with approval in *United States v. Glenn*, 25 MJ 278, 279 (CMA 1987).